# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| OHIO CVS STORES, LLC, | ) | CASE NO: 1:24-cv-49 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY P. HOPKINS |
| | ) | |
| v. | ) | |
| | ) | **MOTION FOR DEFAULT** |
| PHILIP KASSOVER, et al., | ) | **JUDGMENT AGAINST PHILIP** |
| | ) | **KASSOVER** |
| Defendants. | ) | |
| | ) | |
| | ) | |

NOW COME Defendants Allerand Realty Holdings, LLC; Richard Sabella; GCC Realty Company, LLC; ACLCP Cincinnati, LLC; GCC Realty Company, LLC, as successor-by-merger for GCC Cincinnati, LLC; and ACLCP Cincinnati, LLC, as successor-by-merger for SCP 2001A-CSF-51 LLC (collectively, "Allerand Defendants"), by and through their counsel, SCHNEIDER SMELTZ SPIETH BELL LLP and VARNUM LLP, and move for a default judgment against Defendant Philip Kassover under Federal Rule of Civil Procedure 55(b) and to dismiss Plaintiff's Interpleader Complaint under Rule 12(b)(1). In support of this motion, the Allerand Defendants rely upon the law and argument in their contemporaneously filed brief, along with the exhibits attached thereto, which the Allerand Defendants incorporate by reference.

Accordingly, the Allerand Defendants respectfully request that the Court enter a default judgment in their favor and against Defendant Kassover; declare that Defendant Kassover has forfeited any and all claim to rent payments from Plaintiffs or membership interest in Defendants; direct Plaintiff to pay its rent to ACLCP Cincinnati, LLC, as sole member of the titleholder, ACLCP; order the Clerk to disburse to ACLCP Cincinnati, LLC any funds interpleaded to date; and dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction.

Respectfully submitted,

*/s/ Aanchal Sharma*
Aanchal Sharma (#0086334)
Mark M. Mikhaiel (#0091656)
Jenna R. Bird (#0101434)
Schneider Smeltz Spieth Bell LLP
1375 E. Ninth St., Ste. 900
Cleveland OH 44114
(216) 696-4200
(216) 696-7303 (fax)
mmikhaiel@sssb-law.com
asharma@sssb-law.com
jbird@sssb-law.com

and

Perrin Rynders (P38221)
Neil Youngdahl (P82452)
VARNUM LLP
P.O. Box 352
Grand Rapids MI 49501-0352
(616) 336-6000
prynders@varnumlaw.com
neyoungdahl@varnummlaw.com

*Counsel for Defendants*
*GCC Realty Company, LLC, for itself and as*
*successor-by-merger for GCC Cincinnati,*
*LLC; Allerand Realty Holdings, LLC; ACLCP*
*Cincinnati, LLC, for itself and as successor-by-*
*merger for SCP 2001A-CSF-51, LLC; and*
*Richard J. Sabella*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically with the Court's ECF system with notice to all parties of record and was also served on May 3, 2024 via U.S. mail and email on the following:

Phillip Kassover
5 Shore Drive
Kings Point, New York 11024
Email: phillip.kassover@gmail.com

*/s/ Aanchal Sharma*
Aanchal Sharma (#0086334)

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DIVISION OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

| | |
|---|---|
| OHIO CVS STORES, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>PHILIP KASSOVER, ALLERAND<br>REALTY HOLDINGS, LLC, SCP 2001A-<br>CSF-51 LLC, RICHARD J. SABELLA, GCC<br>REALTY COMPANY, LLC, GCC<br>CINCINNATI, LLC, and ACLCP<br>CINCINNATI, LLC,<br><br>        Defendants. | Case No. 1:24-cv-00049<br><br>Hon. Jeffrey P. Hopkins |

**BRIEF IN SUPPORT OF THE ALLERAND DEFENDANTS' MOTION**
**FOR DEFAULT JUDGMENT AGAINST PHILIP KASSOVER UNDER RULE 55(B)**
**AND TO DISMISS PLAINTIFF'S INTERPLEADER ACTION UNDER RULE 12(B)(1)**

## INTRODUCTION

The Allerand Defendants[1] are commercial landlords in various states that, as relevant to this case, lease properties to subsidiaries of Ohio CVS Stores LLC, and its affiliates. Within the past few months, CVS has caused its subsidiaries to file five identical interpleader actions across four states, asserting that there are legitimate questions about where the subsidiaries should direct their rent payments.[2] This is one of these cases. CVS's concerns are based primarily on a

---

[1] The Allerand Defendants are every defendant named in this suit except Phillip Kassover. Specifically, the Allerand Defendants are GCC Realty Company, LLC, for itself and as successor-by-merger for GCC Cincinnati, LLC; Allerand Realty Holdings, LLC; ACLCP Cincinnati, LLC, for itself and as successor-by-merger for SCP 2001A-CSF-51, LLC; and Richard J. Sabella.

[2] *See Hook-Superx, LLC, v. Kassover*, Case No. 1:24-cv-216 (S.D. Indiana, filed January 31, 2024); *Tennessee CVS Pharmacy, LLC v. SCP 2001 A-CSF-76, LLC*, Case No. 2:24-cv-16 (E.D. Tenn. filed January 31, 2024); *South Carolina CVS Pharmacy, LLC v. SCP 2001A-CSF-72, LLC*, Case No. 24-cv-524 (D.S.C. filed January 31, 2024); *South Carolina CVS Pharmacy, LLC v. SCP 2001A-CSF-75, LLC,* Case No. 2:24-cv-525 (D.S.C. filed January 31, 2024).

communication it received from Defendant Phillip Kassover nearly four years ago, in which he asserted that he was the "attorney-in-fact" of the landlord entities and therefore entitled to receive the rent.

CVS's concerns are easily addressed. Defendant Kassover was a judgment creditor of one of the Allerand Defendants (GCC Realty Company, LLC) based on a 15-year-old New York money judgment. Rather than follow permissible enforcement remedies available to judgment creditors, however, Kassover has spent the past few years attempting to disrupt and interfere with the Allerand Defendants' business. Kassover's favorite tactic is to misrepresent the effect of the aging New York judgment and he has employed this tactic against CVS. However, this Court need not delve too deeply into the judgment's complicated history or Kassover's meritless claims, because Kassover has defaulted, despite being properly served months ago. Accordingly, the Court should enter a default judgment against Kassover and dismiss CVS's interpleader action for lack of subject-matter jurisdiction.

## BACKGROUND

### I. FACTUAL BACKGROUND

From 2001 to January 2024, Defendant SCP 2001A-CSF-51, LLC ("SCP"), owned real property in Cincinnati, Ohio. Beginning in 2001, SCP leased this property to Vine & Taft CVS, Inc., which is now known as Ohio CVS Stores, L.L.C. ("Plaintiff") for the operation of a CVS Pharmacy. (ECF No. 1, PageID.1, 11). In January 2024, SCP merged with Defendant ACLCP Cincinnati, LLC, ("ACLCP") such that ACLCP is Plaintiff's current landlord. (Certificate of Merger, Ex. A).

From 2002 to 2012, Plaintiff paid its rent directly to SCP's lender, Wells Fargo. (ECF No. 1, PageID.6). In 2012, Plaintiff paid to Wells Fargo a lump-sum that covered its rent obligations

2

through January 31, 2024.  (*Id*.).  Thus, Plaintiff's first rent payment due directly to its landlord, ACLCP, was due February 1, 2024. (*Id*.).

Plaintiff did not make that payment.  Instead, the day before its rent was due, Plaintiff filed this interpleader action, asserting its fear that ACLCP was not the proper party to receive its rent. (ECF No. 1).  According to its Complaint, Plaintiff's fear is primarily based on a communication that CVS received in 2020, in which Kassover's attorney asserted that a New York judge had appointed Kassover as "Attorney-in-Fact" of GCC Realty Company, LLC, the Allerand Defendant that owned all beneficial interest in SCP at that time.  (ECF No. 1, PageID.7, 25).  Kassover asserted that this designation gave him plenary authority over GCC Realty Company, LLC and, by extension, its subsidiary SCP, as predecessor-in-interest to ACLCP, and its lease with Plaintiff, including the authority to collect Plaintiff's rent.  (ECF No. 1-6, PageID. 170).  Although Plaintiff asserts that "[s]ince receiving these notices, CVS has received other conflicting notices" from the Allerand Defendants and Kassover, it does not specifically describe any communications other than this 2020 e-mail.  (*Id*.).

The Allerand Defendants' history with Kassover is not necessary for the Court's resolution of this action, but some background may be helpful.  From approximately 1980 to 2002, Kassover and other Kassover family members owned and operated a real estate company, The Garden City Company, Inc. ("Garden City").  (Ex. B, Sabella Aff. ¶ 10).  In or around 2000, one of Kassover's family members declared bankruptcy and a court-appointed trustee attempted to liquidate his share of the company.  (*Id*.).  In or around 2000, one of Kassover's family members declared bankruptcy and a court-appointed trustee attempted to liquidate his share of the company.   The trustee and the Kassover family were unable to agree to liquidation plans until 2002, when a majority of the family and the trustee approved a sale of Garden City to PVP-GCC Holdingco II, LLC ("PVP", of which

Defendant Richard Sabella was the majority beneficial owner), pursuant to which PVP became Garden City's sole shareholder.  (*Id*.).  The only shareholder to object to the sale was Kassover, but he was compelled to sell pursuant to the bankruptcy court's approval of the plan.  (*Id*.).

Shortly after the purchase of the Kassover company, Mr. Sabella negotiated and closed on the purchase of the portfolio of holding companies that owned the properties leased to CVS, including SCP (which owned the Cincinnati property) (*Id*. at ¶ 9).  As the new owner of Garden City, he created a subsidiary, GCC Cincinnati, LLC, to acquire the equity in SCP in connection with the closing of the CVS transaction.  (*Id*. at ¶ 13).  GCC Cincinnati, LLC, was wholly owned by its sole member, Garden City, and Mr. Sabella was the majority beneficial owner of both Garden City and SCP. (*Id*. at ¶ 11, 13, 15).

Years later, Defendant Kassover sued Garden City and PVP in New York, asserting that he had received inadequate consideration for his share of his family's company.  During the pendency of Kassover's lawsuit, in December 2007, Garden City merged into another company that was beneficially owned by Mr. Sabella, GCC Realty Company, LLC, such that GCC Realty Company, LLC became the legal successor-by-merger to Garden City.  (*Id*. at ¶¶ 16-17).  Kassover ultimately received a judgment against GCC Realty Company.  (ECF No. 1-6, PageID.170).

In an attempt to collect on his judgment, Kassover filed a "turnover motion" in New York State Court, asking for an order compelling GCC Realty Company to turn over its membership interests in its LLC subsidiaries—including SCP—to the New York County Sheriff for public auction to satisfy the judgment.  (ECF No. 1-8, PageID.190-192).  The court granted this motion and later appointed Kassover as "attorney-in-fact" for GCC Realty Company in furtherance of delivering the membership interest to the Sheriff for auction.  (Ex. C, November 18, 2027, Order, p. 4). **This appointment was limited**: Kassover became attorney-in-fact only **"for the purpose**

4

**of executing any and all documents on GCC's behalf** to effectuate the turnover, transfer, delivery, payment, sale, and/or liquidation of any of GCC's assets and/or personal property pursuant to the September 2017 Order and in aid of Plaintiffs' efforts to enforce the Judgment." (*Id.*) (emphasis added).  Nothing in the court's order provided Kassover with any rights to dictate business operations, amend operating agreements, or collect rents owed to GCC Realty Company or its subsidiaries.  Rather, this appointment was granted solely to further the end result of Kassover's turnover motion: a public auction of GCC Realty Company's assets, including its membership interests in its subsidiaries.

Although the New York Sheriff noticed and scheduled the auction for February 27, 2019, respecting certain interests that were delivered to him by Kassover during December 2018,[3] Kassover requested that the auction be delayed and rescheduled. Ultimately, because Kassover never approved the auction going forward, the auction never occurred.  (Ex. D, Notices Regarding Auctions).[4]  Because the auction never occurred, GCC Realty Company retained all interests in its subsidiaries, including SCP.  (Sabella Aff. ¶ 20).

Kassover's powers related to execution of the turnover order and his special judgment lien priority period granted by that order expired in 2018, at the end of the extended priority period

---

[3] Kassover delayed over a year in sending anything to the Sheriff after being granted his limited attorney-in-fact powers.  When he did finally send something to the Sheriff in December 2018, the documents he created and sent were ineffective because, among other things, they did not evidence GCC's membership interest in SCP (or GCC's interest in the other titleholders of CVS properties that it then owned) which were the entities named by the N.Y. Court on page 16 of the turnover order.  Instead, he created certificated membership interests (an act that violated the relevant entity operating agreements) in GCC's name respecting its ownership of former subsidiaries (including GCC Cincinnati, LLC) that no longer existed because they had merged into GCC a decade prior, in 2008, rather than a simple assignment of GCC's interest in the entities named in the turnover order.  As a result, even had Kassover allowed the auction to proceed in 2019, it would not have effectively transferred any of GCC's assets.
[4] Kassover agrees that the auction never happened.  (ECF No. 29, PageID.317).

granted by the Court.  (Ex. E, August 22, 2018 Order).  Put simply, Kassover was only ever—at most—a judgment creditor of GCC Realty who started enforcement proceedings but suspended them, thereby preventing anything from being sold or transferred.  And because he sat on his rights as a judgment creditor for years after the aborted proceedings, the levy pursuant to the execution became void in 2019 under NY CPLR §5232(a) as to property not already delivered to the Sheriff; his judgment lien lost its special priority status afforded by the turnover order in 2018; and any priority that attached to property that was delivered to the Sheriff prior to expiration of the execution lost its priority as a result of Kassover's direction to the Sheriff to delay or suspend the auction.  *See Excelsior Co. v. Globe Cycle Works,* 49 App. Div. 304 at 309-310 (N.Y. App. Div. 1990) ("…any direction by the execution creditor to the sheriff, which suspends the lien or delays the enforcement of the levy, renders the execution dormant against subsequent creditors or bona fide purchasers).  So, in addition to no interests having been sold or transferred at auction in 2019, if Kassover attempted to restart enforcement proceedings today, his alleged interest as a judgment creditor would be subordinate to intervening creditors, liens and transfers.

Kassover's failure to obtain any interest in GCC Realty Company has not stopped him from making mischief in the Allerand Defendants' business.  Kassover has repeatedly misrepresented the scope of the turnover order's language regarding his former powers as attorney-in-fact to pretend that he acquired ownership and control of GCC's assets, concealing the fact that his only rights were limited authority to assist in the delivery of assets to the N.Y. Sheriff for auction, after which the auction proceeds, if any, could have been applied against the 15-year-old money judgment.  He has advanced this deceit in an attempt to divert rent payments due to the Allerand Defendants for multiple properties in other states.  This has resulted in litigation between the Allerand Defendants and Kassover, some of which is still pending.

6

## II.    THESE PROCEEDINGS

On January 31, 2024, Plaintiff filed this action for interpleader against the Allerand Defendants and Kassover. (ECF No. 1). Plaintiff served Kassover with the Complaint and Summons on February 11, 2024. (ECF No. 8, PageID 267). Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A), Kassover had until March 3, 2024 to file his answer. He did not file an answer within that time. In contrast, the Allerand Defendants filed a timely answer. (ECF No. 26).

On March 26, 2024, the Allerand Defendants filed a motion for entry of default against Kassover. (ECF No. 27). The Clerk entered default against Kassover. (ECF No. 28).

On April 12, 2024, Kassover filed an "answer," in which he rehashed his attorney-of-fact story but acknowledged that he never auctioned off SCP's membership interest. (ECF No. 29). Kassover also sent a letter to the Court, requesting that his answer "cure" his default. (ECF No. 31). Despite acknowledging that he was "personally served with the Complaint and therefore aware of the preceding [sic]" and that "it is the responsibility of each Party to a litigation to know when papers are due for filing," he provided no explanation for his failure to file a timely answer.[5] (ECF No. 31).

Because Kassover inexplicably answered a month late, the Allerand Defendants, as the adverse claimants, move for default. And because interpleader, by its nature, requires adverse claimants, the dismissal of Kassover from this action will destroy this Court's subject matter jurisdiction over Plaintiff's complaint.

---

[5] Kassover's attachment of communications with Plaintiff's counsel in which Plaintiff indicates it will not seek an entry of default until April 12, 2024, is of no importance (EFC No. 31). There was no leave provided by the Court, and this Court does not permit litigants to bind deadlines through side agreements, "The parties cannot contract to usurp the Court's most fundamental work of managing the cases on its docket." *In re E. I. du Pont de Nemours & Co. C-8 Personal Injury Litigation*, 204 F. Supp. 3d 962, 77 (S.D.Ohio 2016).

## **ARGUMENT**

Federal Rule of Civil Procedure 55(b) allows a party to "apply for a default judgment" "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend[.]" Fed. R. Civ. P. 55(b). "While more frequently it is the plaintiff who moves for entry of default judgment, the right of a defendant in an interpleader action to do so is recognized." *Sun Life Assur. Co. of Canada v. Conroy*, 431 F. Supp. 2d 220, 226 (D.R.I. 2006); *see also, e.g.*, *Metro. Life Ins. Co. v. Burgess*, Case No. 7:21-cv-521, 2022 WL 17477576, at *2 (W.D. Va. Dec. 6, 2022) *Aetna Life Ins. Co. v. Gablow*, No. 09-14049, 2010 WL 4024719, at *2 (E.D. Mich. Oct. 13, 2010); *Am. Nat'l Bank & Trust Co. of Chicago v. Alps Elec. Co.*, No. 99 C 6990, 2002 WL 484845, at *2 (N.D.Ill. Mar. 29, 2002) (defendant was "clearly entitled" to have his motion for default judgment granted against one of two other defendants who had neither answered nor appeared); 10A Fed. Prac. & Proc. Civ. § 2701 (4th ed.) ("Interpleading stakeholder can utilize the rule permitting the entry of default and judgment as to parties who fail to plead or otherwise defend.").

"In the context of an interpleader action, a defendant against whom a default judgment has been entered forfeits any claim of entitlement that might have been asserted by the defendant." *Guardian Life Ins. Co. of Am. v. Spencer*, No. 5:10CV00004, 2010 WL 3522131, at *3 (W.D. Va. Sept. 8, 2010); *EAN Holdings, LLC v. Ishola*, No. CV 2:13-26841, 2015 WL 13622490, at *1 (S.D.W. Va. Aug. 4, 2015); *Columbus Life Ins. Co. v. Walker-Macklin*, No. 1:15-CV-535, 2016 WL 4007092, at *2 (S.D. Ohio July 25, 2016), report and recommendation adopted, No. 1:15-CV-535, 2016 WL 4449570 (S.D. Ohio Aug. 24, 2016); *Farmers New World Life Ins. Co. v. Gathright*, No. 3:18-CV-176-JD-MGG, 2019 WL 13215518, at *3 (N.D. Ind. Sept. 12, 2019); *Skidmore v. Boilermaker–Blacksmith Nat'l Pension Trust*, 2009 WL 1362067 (E.D. Tenn. 2009); *Federal. Ins.*

*Co. v. Adams*, No. 05–cv–00965–MSK–CBS, 2007 WL 1456103 (D. Colo. May 15, 2007) ("A default judgment entered against an interpleader defendant thus terminates that party's interest in the fund at issue.")

"Clearly, if all but one named interpleader defendant default[s], the remaining defendant [is] entitled to the fund." *Nationwide Mut. Fire Ins. Co. v. Eason*, 736 F.2d 130, 133 n.4 (4th Cir. 1984); *Usable Life Co. v. Gann*, No. 1:09-CV-77, 2009 WL 4348588, at *2 (E.D. Tenn. Nov. 24, 2009); *Gathright*, 2018 WL 11447845, at *2 (N.D. Ind. Nov. 13, 2018).

Kassover is in default. (ECF No. 28).[6] In contrast, the Allerand Defendants have answered the Complaint and fully asserted their claim to the CVS rents. Under these circumstances, the Allerand Defendants are entitled to a default judgment in their favor and against Kassover with respect to Plaintiff's interpleaded claim. The Allerand Defendants—specifically ACLCP Managerco, LLC, the sole member of the titleholder, ACLCP —are entitled to Plaintiff's rent payments.

Moreover, because Kassover has forfeited any claim he may have had to the rent payments and any claim of membership interest in any entity that he might have been able to assert[7] by not appearing in this action, Plaintiff's interpleader complaint is no longer appropriate. *See Aaron v.*

---

[6] To the extent the Court construes Kassover's answer or letter as a request to set aside the Clerk's entry of default, it should not set aside the default. The Court may set aside an entry of default for good cause . . ." Fed. R. Civ. P. 55(c). A party seeking to vacate an entry of default prior to the entry of final judgment must show: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 630 (7th Cir. 2009). Kassover has provided no cause for his default—good or otherwise. He admits that he knew of this suit and that he understood that he had an obligation to respond. (ECF No. 31, PageID.339-340). He just did not do it. Nor does Kassover have a meritorious defense to the Allerand Defendants' claim, as demonstrated by the limited, expired nature of his "attorney-in-fact" appointment and his admission that no membership interests in SCP have ever transferred. SCP's successor-in-interest, ACLCP, therefore retains all interest in Plaintiff's rent payments.

[7] To be clear, Kassover had *no* such claims.

*Mahl*, 550 F.3d 659, 663 (7th Cir. 2008) ("Interpleader is justified only when the stakeholder has a real and reasonable fear of double liability or conflicting claims."). Once this Court enters a default judgment against Kassover, there will not be "two or more adverse claimants" who "are claiming or may claim to be entitled" to CVS's rent payments. *See* 28 U.S.C. § 1335(a)(1). Accordingly, dismissal of Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction will be appropriate when this Court enters a default judgment against Kassover.

## CONCLUSION

For these reasons, the Allerand Defendants respectfully request that the Court enter a default judgment in their favor and against Defendant Kassover; declare that Defendant Kassover has forfeited any and all claim to rent payments or membership interest; direct Plaintiff to pay its rent to ACLCP Cincinnati, LLC, as sole member of the titleholder, ACLCP; order the Clerk to disburse to ACLCP Cincinnati, LLC any funds interpleaded to date; and dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction.

Respectfully submitted,

Dated: May 3, 2024                                  By: /s/ Aanchal Sharma
                                                        Aanchal Sharma (#0086334)
                                                        Mark M. Mikhaiel (#0091656)
                                                        Jenna R. Bird (#0101434)
                                                        SCHNEIDER SMELTZ SPIETH BELL LLP
                                                        *Attorneys for Defendants*
                                                        1375 E. Ninth Street, Suite 900
                                                        Cleveland, OH 44114
                                                        (216) 696-4200
                                                        asharma@sssb-law.com
                                                        mmikhaiel@sssb-law.com
                                                        jbird@sssb-law.com

                                                        and

Perrin Rynders (P38221)
Neil E. Youngdahl (P82452)
VARNUM LLP
*Attorneys for Defendants*
P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
prynders@varnumlaw.com
neyoungdahl@varnumlaw.com