# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| OHIO CVS STORES, LLC, | : |
| *Plaintiff*, | : Case No. 1:24-cv-49 |
| v. | : Judge Jeffery P. Hopkins |
| PHILIP KASSOVER, *et al.*, | : |
| *Defendants*. | : |

## OPINION AND ORDER

Rent is due, but to whom should rent be paid? If the answer to that question were clear, there would be no need for this interpleader action. Plaintiff CVS Stores, LLC ("CVS") leases property in Cincinnati under a lease with Defendant SCP 2001A-CSF-51 LLC ("SCP"). CVS's rental payments are due and owing to SCP under that lease—but as a result of an alleged merger and unclear transfers of ownership, there is an ongoing dispute between Defendant Philip Kassover, and Defendants Richard Sabella, Allerand Realty Holdings, LLC, ACLCP Cincinnati, LLC, GCC Realty Company, LLC, and GCC Cincinnati, LLC (the "Allerand Defendants"), as to who owns SCP and who is entitled to CVS's rent payments. So, to avoid becoming collateral damage, CVS has come to this Court for relief pursuant to 28 U.S.C. § 1335 and Fed. R. Civ. P. 22 and, importantly, seeks leave to deposit monthly rent payments with the Clerk of Court throughout the duration of this interpleader action. *See* Doc. 7.

## I. BACKGROUND

In December 2001, lessee CVS entered into a lease agreement with lessor SCP to lease property for a retail store and pharmacy through January 2024. Compl., Doc. 1, ¶ 11, 12. Before the lease's expiration, CVS notified Defendant GCC Realty, Defendant Allerand, and Defendant Kassover that CVS intended to exercise its lease renewal option for an additional five-year period to commence on February 1, 2024, and continue until January 31, 2029. *Id.* ¶ 13–14. True to its word, CVS then formally exercised its option to extend the lease term until January 31, 2029. *Id.* ¶ 15.

Under the lease, CVS made its initial monthly rent payments to SCP's lender, Wells Fargo. *Id.* ¶ 18. On or about January 1, 2012, CVS made a lump-sum payment for its remaining payments under the initial lease term. *Id.* ¶ 19. As a result, CVS fulfilled its rent obligations through January 31, 2024, and did not owe any other rent payments to SCP until the five-year renewal period commenced on February 1, 2024. *Id.* ¶ 20–21. But before that date, CVS learned of an ongoing dispute between Defendants as to who is legally entitled to receive those rents from CVS under the lease. *Id.* ¶ 22–23. Troubled by this development, CVS elected to file this interpleader action on January 31, 2024—one day before commencement of the new lease period seeking to join all Defendants in one proceeding to once and for all settle the question of to whom the rents should be paid.

The origins of the ongoing dispute between the Defendants date back to March 2003 when Defendant Sabella notified CVS that membership interests in SCP had been assigned and that the new owner of those interests was GCC Cincinnati, a subsidiary of GCC Realty. *Id.* ¶ 24. Many years later, in August 2020, counsel for Defendant Kassover notified CVS that Defendant Kassover had been appointed as the "Attorney-in-Fact" of GCC Realty and that

2

as a result, CVS should send all notices under the lease to Defendant Kassover's counsel. *Id.* ¶ 25. This and other communications prompted uncertainty for CVS as to who is entitled to receive CVS's rental payments. *Id.* ¶ 26. And CVS is not alone. There are several other cases being litigated throughout the country involving these same Defendants and the identical question of who the rightful recipient of rental payments for various properties is. *Id.* ¶ 27 (citing *Richard J. Sabella, et al. v. Philip Kassover*, No. 9:16-CV-81277 (S.D. Fla. Mar. 24, 2017); *Walgreen Co. v. Philip Kassover, et al.*, No. 653071/2021 (Sup. Ct. N.Y. Cnty. June 27, 2024); *Ruth Kassover, et al. v. PVP-GCC HoldingCo II, LLC, et al.*, No. 602434/2005 (Sup. Ct. N.Y. Cnty. Sep. 23, 2013)). Prior to filing this interpleader action, CVS requested "clear, joint and written instructions from all of the parties," or a court order clarifying "to whom CVS should be paying rent and other charges pursuant to the Lease." *Id.* ¶ 29; *see* Doc. 1, Pl. Ex. 6. That was met with only one reply—wherein Defendant ACLCP directed CVS to make rent payments to ACLCP and to disregard Defendant Kassover's claims. *Id.* ¶ 30; *see* Doc. 1, Pl. Ex. 7. This lawsuit followed.

## II. INTERPLEADER

An interpleader action "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1704) (3d ed. 2001) (footnote omitted). This type of equitable proceeding can be invoked in two ways: (1) statutory interpleader under 28 U.S.C. § 1335 and (2) rule interpleader under Federal Rule of Civil Procedure 22. Statutory interpleader requires minimal diversity between "[t]wo or more adverse claimants," an amount in controversy in excess of $500.00, and a

deposit for the amount in dispute. 28 U.S.C. § 1335(a)(1); *AmGuard Ins. v. SG Patel & Sons II, LLC*, 999 F.3d 238, 243 (4th Cir. 2021). Rule interpleader, which is typically brought under diversity jurisdiction, requires complete diversity between the parties and an amount in controversy in excess of $75,000.00. *AmGuard*, 999 F.3d at 244.

Interpleader actions generally have two parts. At first, "the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader." *United States v. High Tech. Prods.*, 497 F.3d 637, 641 (6th Cir. 2007). If a court determines that interpleader is proper, a disinterested stakeholder typically deposits "with the court the fund or property at issue and [is] discharged from further liability during the first stage of the action, before the court determine[s] the relative possessory and ownership rights of the parties and distribute[s] the fund or property." *Id.* at 641, n.2. Then at the second stage, "the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial." *Id.* at 641.

### III. ANALYSIS

Even though several months have passed since the filing of this lawsuit, we are still clearly in the initial stages of this litigation. But before this Court can decide whether CVS has properly invoked an interpleader action, we must first resolve several other motions that have been filed by the Allerand Defendants, Defendant Kassover, and Proposed Intervenors Cincinnati Remainderco, LLC and The Paula and Jerry Gottesman Family Supporting Foundation, Inc. ("Remainderco Intervenors" or "Remainderco"). Those motions, in the order they are addressed, are as follows:

4

1. The Remainderco Intervenors' Motion to Intervene (Doc. 50) ("Intervention Motion");

2. The Allerand Defendants' Motion for Default Judgment (Doc. 40) ("Default Judgment Motion");

3. The Allerand Defendants' Motion to Stay (Doc. 32) ("Stay Motion"); and

4. Defendant Kassover's Request for the Court to Accept his Answer and Cure Default (Doc. 31).

After these motions have been resolved, the Court will then turn to:

5. CVS's Motion for Leave to Deposit Monthly Interpleader Funds (Doc. 7) ("Interpleader Motion");

6. Defendant Kassover's Motion to Clarify (Doc. 53); and

7. Defendant Kassover's Request for the Court to Take Judicial Notice (Doc. 64).

### A. Motion to Intervene (Doc. 50)

First addressing Remainderco's Intervention Motion, in it, Remainderco seeks leave to intervene as of right, or in the alternative, to join this action by permissive intervention. Remainderco claims this is necessary in order (1) to assert an objection to the relief sought by the Allerand Defendants in their Default Judgment Motion against Defendant Kassover (Doc. 40), (2) to answer CVS's complaint (Doc. 1), and (3) to file a crossclaim against the original Defendants. Doc. 50. The Remainderco Intervenors face opposition from the Allerand Defendants, *see* Doc. 59, but CVS and Defendant Kassover have confirmed that they do not oppose the Remainderco Intervenors' attempt to intervene in this action. Docs. 54, 55.

There are two types of court sanctioned intervention by a potential party into an existing lawsuit: intervention as of right under Fed. R. Civ. P. 24(a)(2) and permissive

5

intervention under Fed. R. Civ. P. 24(b)(1)(B). With regard to the former, the Rule provides that on timely motion, the court must permit a proposed party to intervene when the party:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Permissive intervention, on the other hand, establishes a "zone of discretion" within which a court operates. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997). While mindful of relevant factors like prejudice and undue delay, a district court acts well within its discretion when granting intervention if the proposed party's motion is timely and there is at least one common question of law or fact. *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005).

Timeliness is a threshold consideration for both mandatory and permissive intervention, *Blount-Hill v. Zelman*, 636 F.3d 278, 283-84, 287 (6th Cir. 2011), and "should be evaluated in the context of all relevant circumstances." *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990). Mindful that no single factor is dispositive, a court should consider: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the time preceding the motion during which the intervenor knew or reasonably should have known of their interest in the case; (4) the prejudice to the original parties due to the intervenor's failure to seek intervention sooner after recognizing their interest was implicated; and (5) any unusual circumstances militating against or for intervention. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 473 (6th Cir. 2000) (citing *Jansen*, 904 F.2d at 340).

The Allerand Defendants say that Remainderco's proposed intervention is untimely. Other factors, however, militate strongly against reaching that conclusion. The Allerand Defendants argue that intervention at this "late stage," as they describe it, would be a mistake

because default has already been entered against Defendant Kassover and the Remainderco Intervenors filed their Intervention Motion after the Allerand Defendants' Default Judgment Motion. Doc. 59, PageID 734. The Allerand Defendants also argue that if their motion was to be granted, then this case would be dismissed. The Allerand Defendants' arguments fall of their own weight. In the scheme of things, this case remains in its infancy. Notably, this Court had yet to decide the Allerand Defendants' Default Judgment Motion at the time the Remainderco Intervenors sought to intervene, and as the Court will discuss more fully below, the Allerand Defendants are not entitled to a default judgment.

Here, also, the Remainderco Intervenors seek to intervene in order to assert their right to CVS's rental payments, which is central to this interpleader action. Remainderco represents that they sought to intervene as soon as they learned of this action "through a charitable organization which has a similar interest in a property in another state which is yet the subject of another interpleader action by CVS against similarly affiliated persons and entities." Doc. 50, PageID 560. On these facts, the Court is hard pressed to believe that any prejudice will redound against the Allerand Defendants, CVS, or Kassover. The Remainderco Intervenors highlight the complexities of this case and say that the "multitude of business entities and individuals involved" favors intervention. *Id.* In sum, the Remainderco Intervenors have made a convincing showing that intervention is timely.

### 1. Intervention as of Right

To intervene as of right, the proposed party must establish (1) that the request is timely, (2) that they have a substantial legal interest in the case, (3) that their ability to protect that interest absent intervention would be impaired, and (4) that the existing parties cannot adequately represent that interest. *Stupak-Thrall*, 226 F.3d at 471 (citing *Michigan State*, 103

7

F.3d at 1245). All criteria must be met, otherwise a request for intervention as of right must be denied. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989) (quoting *Triax Co. v. TRW Inc.*, 724 F.2d 1224, 1227 (6th Cir. 1984)).

The Court has already found intervention timely. Thus, keeping in mind that the Court "must accept as true the non-conclusory allegations of the motion," we turn now to the next factor for consideration in cases of intervention as of right: substantial legal interest. *Horrigan v. Thompson*, No. 96-4138, 1998 U.S. App. LEXIS 9506, at *6 (6th Cir. May 7, 1998) (per curiam) (quoting *Lake Investors Dev. Grp. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1258 (7th Cir. 1983)). This is a "fact-specific" inquiry, *Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007), which requires that the proposed party possess a direct and immediate interest "such that it is a 'real party in interest in the transaction which is the subject of the proceeding.'" *Kirsch v. Dean*, 733 F. App'x 268, 280 (6th Cir. 2018) (citations omitted); *see Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 154 (1967).

There is significant debate between the Remainderco Intervenors and the Allerand Defendants as to whether Remainderco has a substantial legal interest. The Remainderco Intervenors rely on a June 10, 2003, Assignment Agreement that created for them a remainder ownership interest in SPC. That agreement "permitted [Defendant] Sabella, through GCC Cincinnati, LLC, to continue to control, manage and benefit from its ownership of the [subject real property] for a period of approximately 21 years." Doc. 50, PageID 555–56. But under the agreement, Cincinnati Remainderco held a remainder interest that vested on May 11,

8

2024—making Cincinnati Remainderco the 100% owner of SPC.[1] *Id.* at PageID 556. The Allerand Defendants dispute the Remainderco Defendants' interest.

Part and parcel to this dispute is an alleged merger that occurred in January 2024—before vesting. The Allerand Defendants describe the merger as having the following result:

> [A]s of January 5, 2024, [the Remainderco Intervenors'] remainder interest in SCP was converted to a 65% fee simple non-managing member interest in Defendant ACLCP, the surviving entity in the Merger, and the TOYs Interest was converted into a 35% fee simple managing member interest in ACLCP.

Doc. 57, PageID 682. The Remainderco Intervenors counter that this was a "unilateral merger undertaken without any approval or consent of [the Remainderco Intervenors]." Doc. 61, PageID 778. Further, Remainderco argues that the merger "is meritless and [] undermines the entire structure of the deal that [Defendant] Sabella created in June of 2003 when his limited liability company was paid $413,500 to transfer the future ownership and control of the subject real estate to [the Remainderco Intervenors] which vested 21 years later on May 11, [2024]." *Id.* The Remainderco Intervenors contend, moreover, that even if the merger is valid, the Allerand Defendants are incorrect in arguing that Remainderco lacks a direct interest such that Defendant ACLCP is the proper party to represent the interests of its members, including the Remainderco Intervenors.

Regardless of the validity of the merger, which is not germane to the Intervention Motion before the Court, the Remainderco Intervenors' non-conclusory allegations show that they possess a direct and immediate interest in the lease payments. At the very least, they possess a 65% (or perhaps even 100%) membership interest in SCP to which CVS's rental payments are due and owing. This is enough to satisfy the Sixth Circuit's "rather expansive

---

[1] In July 2003, Cincinnati Remainderco's membership interest was transferred to J&S Investors Cinci LLC ("J&S"). Later, J&S donated all rights, title, and interest in Cincinnati Remainderco to the Paula and Jerry Gottesman Family Supporting Foundation, Inc. Doc. 50, PageID 556.

9

notion of interest," notwithstanding the Allerand Defendants' opposition. *Michigan State*, 103 F.3d at 1245.

The burden to prove the next factor under the intervene as of right standard, impairment, requires only a nominal evidentiary showing. *Id.* at 1247. The Remainderco Intervenors have shown, perhaps undoubtedly so, that it is very possible that their interest could be impaired if intervention is denied given that this Court must ultimately decide which of the Defendants is entitled to the rental payments that they all lay claim to. This brings us to the last factor, whether the existing parties already in the lawsuit can adequately represent the Remainderco's interest. As with the second factor, this is indeed a low bar: "The [] burden with respect to establishing that its interest is not adequately protected by the existing party to the action is a minimal one; it is sufficient to prove that representation *may* be inadequate. A would-be intervenor is not required to show that the current representation *will in fact* be inadequate." *Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1008 (6th Cir. 2006) (citations omitted) (emphasis added). Given the dispute relative to the legal and practical implications of the alleged merger, the Remainderco Intervenors have shown that the existing parties cannot adequately represent their interest. The filings to date suggest that the arguments made by the Allerand Defendants and those made by the Remainderco Intervenors may diverge based on their respective understandings of SCP's ownership. *See Michigan State*, 103 F.3d at 1247 ("It may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments."). Having considered each of the relevant factors under current Sixth Circuit law, the Remainderco Intervenors are entitled to intervention as of right.

### 2. Permissive Intervention

That aside, even if the Remainderco Intervenors were not entitled to intervention as of right, their request to intervene now, under the more flexible permissive intervention standards of Rule 24(b)(1)(B), is also warranted. First and foremost, Remainderco's motion to intervene, as has been thoroughly addressed by the Court, is timely. No prejudice or undue delay will be visited upon the Allerand Defendants, Kassover, or CVS, the existing parties already involved in this litigation, still in the early stages, over who holds legal title to CVS's rental payments. Second, there exists at least one common question of law or fact that extends to the central theme in this case—which Defendant shall take home the ultimate prize—the rental payments, related inextricably to the question of who should prevail in the litigation. On balance, these factors taken as a whole lead this Court to the inescapable conclusion that permissive intervention is appropriate, regardless of whether intervention as of right has been determined to exist. *See Michigan*, 424 F.3d at 445. For these reasons, the Remainderco Intervenors' Intervention Motion (Doc. 50) is **GRANTED**.

### B. Motion for Default Judgment (Doc. 40)

Next, the Court will address the Allerand Defendants' Default Judgment Motion. Often misunderstood by litigants, there is a two-step sequential process for obtaining default judgment. *See Allied Consol. Enters. v. Aladwan*, No. 2:20-cv-4561, 2021 WL 1572291, at *2 (S.D. Ohio April 22, 2021). First, a party must apply for an entry of default from the clerk. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Then, after a party obtains an entry of default, that party may request that default judgment be entered either by the clerk or by the

11

court. *See* Fed. R. Civ. P. 55(b). Default judgment is an appropriate remedy in interpleader actions when a named interpleader defendant fails to answer the interpleader complaint or assert a claim to the funds. *New York Life Ins. v. Baker*, No. 2:20-cv-2577, 2021 WL 640412, at *2 (S.D. Ohio Jan. 4, 2021) (citing *Prudential Ins. of Am. v. Amarante*, No. 18-CV-13618, 2019 WL 1397247, at *2 (E.D. Mich. Mar. 28, 2019)).

Here, the Allerand Defendants applied for an entry of default against named interpleader defendant, Philip Kassover, on April 11, 2024. Doc. 27. The clerk entered default the next day, April 12, 2024. Doc. 28. But on the same day that default was entered, Kassover answered the complaint. Doc. 29. Then, merely six days later, on April 18, 2024, Kassover moved for the Court to accept his answer and cure the entry of default. Doc. 31. Thereafter, on May 6, 2024, the Allerand Defendants filed their Default Judgment Motion seeking dismissal of this action for lack of subject-matter jurisdiction because, in their view, if default judgment is entered against Kassover, there will no longer be "two or more adverse claimants" who "are claiming or may claim to be entitled" to CVS's rent payments in dispute. Doc. 40, PageID 423.

For purposes of analysis, the Court construes Kassover's request to cure the entry of default as a motion to set aside default under Fed. R. Civ. P. 55(c). Rule 55(c) provides that the "court may set aside an entry of default for good cause[.]" Fed. R. Civ. P. 55(c). There are three factors that the district court should consider when deciding whether there is good cause to set aside an entry of default: (1) whether default was willful, (2) whether setting aside default would prejudice the plaintiff, and (3) whether the defendant has a meritorious defense. *Dassault Systems, SA v. Childress*, 663 F.3d 832, 838–39 (6th Cir. 2011); *United Coin Meter Co. v. Seaboard Coastline. R.R.*, 705 F.2d 839, 844 (6th Cir. 1983). When balancing these factors,

12

the Sixth Circuit reminds us that "[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits." *United Coin Meter*, 705 F.2d at 846 (internal quotation marks omitted).

The willfulness factor in the tripart analysis for setting aside a default entry turns on culpability. "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on judicial proceedings." *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433 (6th Cir. 1996) (internal quotation and citation omitted). In the case at bar, Kassover was served with the interpleader action on February 12, 2024, meaning that his answer was due on March 4, 2024. Doc. 8, PageID 267. By all measures, Kassover's answer, filed on April 12, 2024, was untimely. Certainly, too, his belated answer may have been unreasonable, but Kassover represents that he was also served with no less than five interpleader actions on the same day. Understandably then, Kassover's focus for the moment was on the substance of these complaints, rather than the rules governing his answer time in the instant action. Thus, without more, it does not appear to this Court that Kassover acted with the requisite intent to thwart these judicial proceedings or in reckless disregard of them such that it would deem him culpable of willful intent to default. On this point, we are yet again reminded by the Sixth Circuit that "[o]ur cases discussing motions to set aside default under Rule 55(c) are extremely forgiving to the defaulted party and favor a policy of resolving cases on the merits instead of on the basis of procedural missteps." *United States v. $22,050.00 United States Currency*, 595 F.3d 318, 322 (6th Cir. 2010).

Not giving up on their quest to have the default entry stick, the Allerand Defendants also contend that the circumstances here are "remarkably similar" to those in *Prop.-Owners*

13

*Ins. v. Stofer*, No. 1:16-cv-00211, 2016 WL 6790799 (S.D. Ind. Oct. 17, 2016), *report and recommendation adopted*, 2016 WL 6783227, at *1 (S.D. Ind. Nov. 16, 2016)—a case in which a district court refused to set aside the default entry. But the circumstances are not as similar as the Allerand Defendants would have this Court believe. In *Stofer*, the defendants waited *four months* after receiving service before notifying their counsel. *Id.* at *2. Here, the window of time was markedly less—the response was *filed* a little over one month after the answer was due. The Court also recognizes that Kassover's answer was postmarked April 8, 2024, meaning that Kassover mailed his answer *before* the Allerand Defendants requested the entry of default. Doc. 29, PageID 333. These factors all differentiate this case from *Stofer*, because there, the defendants only sought leave to file an answer after default had been entered against them *and* the plaintiffs had moved for default judgment. *Stofer*, 2016 WL 6790799, at *2. Here again, Kassover's quick action to cure default shortly after learning that default had been entered against him strongly favors setting aside the default. Doc. 31; *see Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986) ("Where the defaulting party . . . [has] given evidence of respect for the court's process by their haste in acting to set aside the default, the courts have been inclined towards leniency.").

Beyond this, the Court also notes that someone in Kassover's camp must have spoken with CVS on his behalf and requested an extension of time for Kassover to file an answer to the interpleader action in the instant case (among the four others he was served with on the same day). Doc. 31, PageID 341–42. Although Kassover did not seek a request for extension from the Court, as the rules require, counsel for CVS apparently agreed to refrain from seeking an entry of default against him, so long as Kassover filed his answer by April 12, 2024. *Id.* As promised, Kassover's answer was received on that date. Doc. 29. Thus, even though his

14

answer was beyond the deadline prescribed by the rules, Kassover does not appear to have been sitting idly by or engaged in any form of dilatory tactics, but rather to have acted with adequate dispatch in attempting to set aside the default entry. Recognizing here that Kassover is acting pro se in the matter, the Court finds that this too supports setting aside the entry of default. *Dassault*, 663 F.3d at 844 (considering the defendant's pro se status when reversing the district court's order denying the defendant's motion to set aside an entry of default). Thus, considering all the circumstances present, the Court finds that the culpability factor significantly favors Kassover.

Next, when contemplating setting aside a default the Court must consider if any prejudice will befall the party that sought default. Prejudice arises where "the delay would result in a loss of evidence, increased opportunities for fraud, or discovery difficulties." *Burrell v. Henderson*, 434 F.3d 826, 835 (6th Cir. 2006) (citing *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)). The Allerand Defendants contend that they will suffer prejudice if default is set aside because it would "lead to more opportunities for fraud by Kassover and the [*sic*] harm to the business operations of the Allerand Defendants." Doc. 46, PageID 538. The substance of this argument implicates the merits of this case and flouts "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). The record in this instance lacks sufficient evidence to support a finding of prejudice to the Allerand Defendants.

The last factor to consider is whether Kassover has a meritorious defense. "A defense is meritorious if 'there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" *Burrell*, 434 F.3d at 834 (quoting *Williams v. Meyer*, 346 F.3d 607, 614 (6th Cir. 2003)). Here, Kassover presents information that reaffirms

15

the question at the heart of the interpleader complaint: who has an interest in SCP and is therefore entitled to monthly rents from CVS? At this point, the Court cannot definitively declare Kassover out of the money. The third and final factor therefore favors setting aside default.

After weighing all the relevant factors and the law, the Court believes the ends of justice will best be served by setting aside the default entered against Kassover and deciding this case on the merits. As a result, the Allerand Defendants' Motion for Default Judgment (Doc. 40) is **DENIED**, and their Motion to Stay (Doc. 32) is **DENIED AS MOOT**. Thus, Kassover's request for the Court to accept his answer and cure default (Doc. 31) is **GRANTED**.

### C. Motion for Leave to Deposit Monthly Interpleader Funds (Doc. 7)

Having resolved these preliminary matters, the Court turns now to CVS's Interpleader Motion. In regard to it, this Court must decide whether it has jurisdiction over the suit, whether the stakeholder, CVS, is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader. *High Tech. Prods.*, 497 F.3d at 641. Jurisdiction is easily met here. For purposes of statutory interpleader, this Court has jurisdiction over this action under 28 U.S.C. § 1335 because there is minimal diversity between the claimants and the amount in controversy exceeds $500.00. Compl., Doc. 1, ¶ 8; Doc. 51; *see State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967) (The interpleader statute "has been uniformly construed to require only 'minimal diversity,' that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be cocitizens."). Likewise, had the only basis for the request to intervene been premised upon permissive intervention under Fed. R. Civ. P. 24(b)(1)(B), this Court also

16

has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy well exceeds $75,000. Compl., Doc. 1, ¶ 8; Doc. 51; *see AmGuard*, 999 F.3d at 243. Further, there are competing claims as to CVS's rent payments and CVS claims no interest in those funds. As a result, this Court agrees that CVS is a disinterested stakeholder that "faces the legitimate fear of multiple accusations of liability if it pays one of the Defendants." Doc. 7, PageID 252 (citing *High Tech. Prods*, 497 F.3d at 642); *Mudd v. Yarbrough*, 786 F. Supp.2d 1236, 1241 (E.D. Ky. 2011)).

Accordingly, it is hereby **ORDERED** that: (1) CVS deposit with the Clerk monthly deposits for $34,422.72, and (2) the Clerk deposit each monthly deposit in the amount of $34,422.72 in an interest-bearing account pending further direction from the Court. In accordance with 28 U.S.C. § 2361, Defendant Kassover, the Allerand Defendants, and the Remainderco Intervenors are **ENJOINED** from taking any action against CVS related to the payment of monthly rent under the lease during the pendency of this action.

### IV. CONCLUSION

Because of the above, the Remainderco Intervenors' Intervention Motion (Doc. 50) is **GRANTED**, Kassover's Motion to Set Aside Default (Doc. 31) is **GRANTED**, the Allerand Defendants' Default Judgment Motion (Doc. 40) is **DENIED**, the Allerand Defendants' Stay Motion (Doc. 32) is **DENIED** as moot, and CVS's Motion for Leave to Deposit Monthly Interpleader Funds (Doc. 7) is **GRANTED**. The Remainderco Intervenors have 21 days from the date of this Opinion & Order to answer CVS's complaint.

Under Fed. R. Civ. P. 12(a)(1)(B), the Allerand Defendants and Defendant Kassover shall answer any crossclaim(s) asserted therein within 21 days after being served. In light of the foregoing, Kassover's Motion to Clarify (Doc. 53) is **DENIED** as moot. The Court will

17

treat Kassover's pro se letter (Doc. 64) filed with the Court as a motion that it take judicial notice of opinions issued in the District Court for the District of South Carolina and **GRANTS** the same. Accordingly, the Court takes hereby judicial notice of those decisions.

Further, as set forth above, it is **ORDERED** that (1) CVS deposit with the Clerk monthly deposits for $34,422.72, and (2) the Clerk deposit each monthly deposit in the amount of $34,422.72 in an interest-bearing account pending further direction from the Court. Further, Defendant Kassover, the Allerand Defendants, and the Remainderco Intervenors are **ENJOINED** from taking any action against CVS related to the payment of monthly rent under the lease during the pendency of this action.

**IT IS SO ORDERED.**

May 30, 2025

Jeffery P. Hopkins
United States District Judge